# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **EXPORT-IMPORT BANK OF THE UNITED STATES,** | ) | **CASE NO. 1:07CV1138** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **ADVANCED POLYMER SCIENCES, INC., ET AL.,** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter comes before the Court upon Defendants' Motion to Vacate the cognovit judgment entered against them by this Court on May 22, 2007.  For the reasons set out below, the Court DENIES the Motion to Vacate.

## I.  FACTS

Advanced Polymer Sciences ("APS") was a Delaware corporation and the family business of Defendants Donald and Arlene Keehan (collectively "Keehans").  Between 1997 and 2000, APS took out a series of loans from Bank One, N.A. ("Bank One").  The series of loans encompassed a domestic line of credit evidenced by three promissory notes dated February 27, 1997, August 10, 1998, and July 30, 1999 (the "Bank One notes").   The series also included an export line of credit evidenced by a single promissory note dated June 29, 2000 (the "Ex-Im note").  In connection with these transactions, the Keehans each signed commercial guarantees (the "Guarantees") dated August 10, 1998, in which they agreed to personally guarantee

-1-

repayment of any and all debts and obligations of APS to Bank One in the event of default by APS.  The Ex-Im note was also guaranteed by Plaintiff Export-Import Bank of the United States ("Export-Import Bank").

In 2001, APS ran into business difficulties and defaulted on the repayment of all the notes to Bank One.  On October 17, 2002, Bank One sent a notice of default and demand for payment of the notes to APS and the Keehans; however, the amounts due were not repaid.  Bank One filed a claim with Export-Import Bank on the Ex-Im note, since Export-Import Bank was a guarantor of that note.  On November 26, 2002, Bank One confessed judgment pursuant to cognovit provisions against APS and the Keehans, as guarantors, on the Bank One notes in the Lorain County Court of Common Pleas and obtained a judgment.  On January 23, 2003, Bank One assigned its interest in the remaining Ex-Im note to Export-Import Bank for ninety percent of the outstanding value, as required by the guarantee agreement between Bank One and Export-Import Bank.

According to Export-Import Bank, it then unsuccessfully attempted recovery on the Ex-Im note through direct contact and via a recovery agent.  Eventually, on April 18, 2007, Export-Import Bank filed a cognovit complaint before this Court against the Keehans as guarantors of the Ex-Im note, pursuant to the cognovit provisions contained in the Guarantees signed by the Keehans.  The Court entered judgment in favor of Export-Import Bank against the Keehans on May 23, 2007.  The Keehans now move the Court to vacate the cognovit judgment entered against them on the Ex-Im note.  The Keehans allege that if allowed to proceed to trial, they can demonstrate meritorious defenses to the Ex-Im note, namely: res judicata, laches, and the invalidity of the cognovit provisions in the Guarantees.

## II.  LAW AND ANALYSIS

### A.  Standard of Review

Under certain circumstances, a court may relieve a party from final judgment by vacating

an existing judgment.  The grounds for granting a party relief from judgment are set out in the

Federal Rules of Civil Procedure, which provide in pertinent part:

> Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just
> terms, the court may relieve a party or its legal representative from a final judgment,
> order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been
> discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or
> misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier
> judgment that has been reversed or vacated; or applying it prospectively is no longer
> equitable; or
>
> (6) *any other reason that justifies relief*.

Fed. R. Civ. P. 60(b) (emphasis added).

It is clear from the facts of this case that the specific grounds set out at Rule 60(b)(1)-(5)

do not apply.  Thus, the Keehans are left to seek relief under Rule 60(b)(6), which "vests power

in courts adequate to enable them to vacate judgments whenever such action is appropriate to

accomplish justice."  *Klapprott v. United States*, 335 U.S. 601, 614-15 (1949).  "In order to be

granted relief under the broadly drafted Rule 60(b)(6), defendants must show that exceptional or

extraordinary circumstances exist that would justify relief from the operation of a judgment *in*

-3-

*addition* to satisfying the three criteria set forth in *United Coin Meter*." *Valvoline Instant Oil Change Franchising, Inc. v. Autocare Assocs., Inc.*, 173 F.3d 857 (Table), 1999 WL 98590, at *3 (6th Cir. Jan. 26, 1999) (emphasis added). The three criteria, in addition to exceptional circumstances, are: whether the plaintiff will be prejudiced; *whether defendant has a meritorious defense*; and whether culpable conduct of the defendant led to the default. *United Coin Meter Co., Inc. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir. 1983).

### B.  Determining the Merit of the Particular Defenses Raised

An important, initial consideration that must be dealt with is exactly what type of showing the Keehans must make to demonstrate that they have a meritorious defense sufficient to justify relief under Rule 60(b). The Keehans cite authority from the First Circuit for the proposition that:

> while a movant, in order to set aside a judgment, need not establish that it possesses an ironclad claim or defense which will guarantee success at trial, it must at least establish that it possesses a potentially meritorious claim or defense which, if proven, will bring success in its wake.

*Teamsters, Chauffeurs, Warehousemen and Helpers Union, Local No. 59 v. Superline Transp. Co., Inc.*, 953 F.2d 17, 20 (1st Cir. 1992). Off this authority, the Keehans base an argument that they have alleged facts which, if proven at trial, constitute a meritorious defense. (Def.'s Reply in Supp. Mot. Vacate at 8). They then state: "The Court's uncertainty about a defense is not reason to allow this judgment to stand. Trial is the appropriate forum for resolution of such doubts." *Id.* It is clear from this argument that the Keehans misunderstand the operation of the meritorious defense requirement in the context of the defenses they have raised.

While trial may be the appropriate forum to resolve factual doubts, trial is unnecessary to resolve issues purely of law. The meritorious defense requirement exists because "a litigant, as a

-4-

precondition to relief under Rule 60(b), must give the trial court reason to believe that vacating the judgment will not be an empty exercise."  *Soto v. Mineta,* No. 01-71244, 2008 WL 4428010, at *6 (E.D. Mich. Sept. 30, 2008) (quoting *Teamsters*, 953 F.2d at 20).  If after vacation of the judgment the court would rule against a defendant on the *legal* merits of his defenses, even though all his *factual* allegations were proven true, then vacation of the judgment would still be an empty exercise.  The Keehans raise three allegedly meritorious defenses: res judicata (specifically, claim preclusion); conflict between the arbitration provision and cognovit provision in the Guarantees, resulting in the cognovit clause being void (an issue of contract interpretation); and laches.  The applicability of all these defenses to the facts of this case are strictly matters of law (or in the case of laches, equity), to be determined solely by the judge.  Therefore, if the Court determines that none of these defenses are cognizable as a matter of law, then vacating the judgment would be an empty exercise and relief under Rule 60(b) is not justified.

### C.  Res Judicata and Laches Are Not Meritorious Defenses to a Cognovit Judgment as a Matter of Law

The cognovit provision that was the basis for the judgment rendered in this case is a creature of Ohio state statutory law, specifically Ohio Revised Code § 2323.13, which provides for the creation of and procedures to govern use of confessions of judgment by warrant of attorney  (commonly referred to as cognovit notes and judgments, respectively).  In brief, the statute allows a debtor in a non-consumer transaction to empower his creditor as an attorney-at-law, who may thereafter produce the cognovit note in the event of default and obtain judgment without hearing or notification to the debtor.  *See generally*, § 2323.13.  Likewise, the Guarantees signed by the Keehans, which contained the cognovit provisions, specifically state

that they "shall be governed by and construed in accordance with the laws of the state of Ohio." (Compl. Ex. 3 & 4).  Therefore, Ohio state law governs what defenses are available to a claim on a contractual obligation containing a cognovit provision.

Given the nature and purpose of a cognovit provision, the defenses available to a debtor who has agreed to such provision are limited.  "By definition, a cognovit provision in a promissory note cuts off every defense, except payment, which the maker of the note may have against enforcement of the note." *Tinnes v. Immobilaire IV, Ltd.*, No. 00AP-87, 2001 WL 122073, at *6 (Ohio App. 10th Dist. Feb. 13, 2001) (citing BLACK'S LAW DICTIONARY 260 (6th ed. 1990)).  "But '[t]he defense of non-default is not the only meritorious defense recognized by courts as being available to a cognovit judgment debtor seeking Civ.R. 60(B) relief.'" *Lykins Oil Co. v. Pritchard*, 169 Ohio App.3d 194, 195 (Ohio App. 1st Dist. 2006) (citations omitted).  For purposes of a Rule 60(b) motion:

> a meritorious defense is one that goes to the integrity and validity of the creation of the debt or note, the state of the underlying debt at the time of confession of judgment, or the procedure utilized in the confession of judgment on the note. A judgment on a cognovit note will generally not be vacated for reasons which do not encompass such matters of integrity and validity.

*First Nat. Bank of Pandora v. Freed*, No. 5-03-36, 2004 WL 1489074, 2004-Ohio-3554, ¶ 10 (Ohio App. 3rd Dist. July 6, 2004).  Examples of meritorious defenses to a cognovit judgment are: "improper conduct in obtaining the debtor's signature on the note; deviation from proper procedures in confessing judgment on the note; and miscalculation of the amount remaining due on the note at the time of confession of judgment." *Id.* at ¶ 9.

The defenses of res judicata and laches, asserted by the Keehans, do not fit into any of these categories of meritorious defenses.  Neither defense involves the integrity or validity of the

-6-

Guarantees they signed, whether the debt had already been satisfied, or whether the procedure utilized in confession of the judgment comported with the statutory procedures set forth in Ohio Revised Code § 2323.13.  Thus, on the basis of Ohio law governing the cognovit provisions, res judicata and laches are not meritorious defenses and are not sufficient to support the Keehans' motion for relief from judgment.

The Keehans' asserted defense regarding the invalidity of the cognovit provision due to its conflict with the arbitration provision does fall within the permissible categories of meritorious defenses.  Determining whether the cognovit provision is valid in light of the arbitration provision involves interpreting the contract language and goes to the validity and integrity of the cognovit provisions in the Guarantees.  Nonetheless, as set out below, that argument is not meritorious because as a matter of law, the cognovit provision does not conflict with the arbitration provision, and thus, both provisions are valid.

## D.  Res Judicata Is Not a Meritorious Defense Because the Parties Agreed to Allow Claim-Splitting

In addition to the fact that res judicata is not a cognizable defense to a cognovit provision, assuming *arguendo* that it were a cognizable defense, the doctrine is inapplicable to the facts of this case because the parties agreed to allow claim-splitting.  "Res judicata extinguishes 'all rights of the plaintiff to remedies against the defendant with respect to all or any part or [sic] the transaction, or series of connected transactions, out of which the action arose.'" *Walker v. Gen. Tel. Co.*, 25 Fed. Appx. 332, 336, 2001 WL 1667282, at *3 (6th Cir. 2001) (citing *J.Z.G. Res., Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 215 (6th Cir.1996)).  Thus, a second action is precluded when:

(1) there is a final decision on the merits of the first action by a court of competent

-7-

jurisdiction; (2) the second action involves the same parties, or their privies, as the first; (3) the second action raises an issue actually litigated or which should have been litigated in the first action; and (4) there is identity of claims.

*Walker*, 25 Fed. Appx. at 336; *accord Browning v. Levy*, 283 F.3d 761, 771 (6th Cir. 2002).

One of the central concepts to res judicata is that when final judgment is rendered in favor of the plaintiff, the plaintiff can no longer maintain an action on the original claim. The original claim, for instance a claim arising under a promissory note, is extinguished, and the plaintiff is left to pursue his rights under the judgment. *Pub. Fin. Corp. of Warren v. Tate*, 197 N.E.2d 825, 827 (Ohio Ct. App. 7th Dist. 1963). This concept is often referred to as merger, which, along with the concept of bar, forms the backbone of the doctrine of res judicata (also referred to as claim preclusion).[1]

"A federal court must give a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered." *Walker v. Gen. Motors Corp.*, No. 91-3096, 940 F.2d 664 (Table), 1991 WL 151078, at *2 (6th Cir. Aug. 8, 1991) (citing *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)); *accord Davis v. Sun Oil Co.*, 148 F.3d 606, 611 (6th Cir. 1998)). Thus, the law of Ohio governs the preclusive effect of the judgment obtained against the Keehans in Lorain County Court of Common Pleas.

───────────────────

[1] As is often the case with legal nomenclature, a multiplicity of terms for the same doctrine has generated significant confusion in the law relating to the effect of former adjudication. Because both parties' briefs evidence confusion on this point, it bears emphasizing that res judicata broadly encompasses both claim preclusion and issue preclusion. But used more narrowly, the terms res judicata, claim preclusion, and estoppel by judgment are all different names for the same doctrine (which is composed of the complimentary concepts of merger and bar), as distinguished from collateral estoppel (also referred to as issue preclusion) which is a related but separate doctrine. In this opinion, res judicata refers exclusively to the doctrine of claim preclusion.

Nonetheless, "[r]es judicata is an affirmative defense which is waivable." *Neighbor v. Nalepka*, No. 90716, 2008 WL 4263562, 2008-Ohio-4708, ¶ 7 (Ohio App. 8th Dist. Sept. 18, 2008) (citing Ohio R. Civ. P. 8(C); *Jim's Steak House, Inc. v. City of Cleveland*, 81 Ohio St. 3d 18, 20 (Ohio 1998)).   This is because one of the primary purposes of the merger concept and res judicata in general is to prevent claim-splitting, in other words, "to protect the defendant from being harassed by repetitive actions based on the same claim." *Davis*, 148 F.3d at 613 (Boggs, J., concurring in part & dissenting in part).

In *Davis*, the Sixth Circuit held that, under Ohio law, all existing claims arising out of a transaction merge into a judgment, "except where 'the parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein.'"  148 F.3d at 612 (construing *Grava v. Parkman Township*, 73 Ohio St.3d 379, 382-83 (Ohio 1995), as holding that Ohio adopts the RESTATEMENT (SECOND) § 26 approach to res judicata, which allows agreed claim-splitting).  However, *Davis* involved acquiescence in the form of the defendant's failure to object when the plaintiff maintained two separate actions arising from the same transaction.  *See generally*, 148 F.3d 606; *accord Shaw v. Chell*, 176 Ohio St. 375, 383 (Ohio 1964) (allowing claim-splitting where defendant failed to timely object).  In contrast, the issue here is whether, by the cognovit provisions in the Guarantees they signed, the Keehans explicitly, or in effect, agreed to allow claim-splitting.  As no authority in the Sixth Circuit nor the state of Ohio definitively addresses the contention that parties may agree by contract to allow claim-splitting, this appears to be an issue of first impression.

Discussing the exception to the rule against claim-splitting when the parties have explicitly, or in effect, agreed to allow it, the Federal Court of Claims stated that "the parties

may enter into an agreement, not directed to a particular contemplated action, which may have the effect of preserving a claim that might otherwise be superseded by a judgment." *PCL Const. Servs., Inc. v. United States*, 84 Fed. Cl. 408, 429 (Fed. Cl. 2008) (discussing authority in favor of agreed claim-splitting); *accord Herrmann v. Cencom Cable Assocs., Inc.*, 999 F.2d 223, 225 (7th Cir. 1993) (parties may "agree to split a single claim into two or more suits"); *Keith v. Aldridge*, 900 F.2d 736, 740 (4th Cir. 1990) (consent by agreement "prevents the defendant from invoking claim preclusion"); *Shelar v. Shelar*, 910 F. Supp. 1307, 1313 n.4 (N.D. Ohio 1995) (stating in dicta that "courts normally acquiesce when the parties *expressly* agree to split a single cause of action"). Thus, the weight of authority appears to favor honoring the parties' agreement to allow claim-splitting.

Likewise, there is persuasive authority holding that when a transaction is structured so that the contract is divisible, this implicitly indicates that the parties have agreed to allow claim-splitting. In particular, when a contract for the payment of money is represented by a series of promissory notes, separate actions may be maintained on the different notes. *Broyles v. Achor*, 78 S.W.2d 459, 463 (Mo. Ct. App. 1935); *Iowa Title & Loan Co. v. Clark*, 247 N.W. 211, 214 (Iowa 1933); *Ginsburg v. McBride*, 226 N.W. 873, 874-75 (Mich. 1929); *Gaddis v. Williams*, 198 P. 483, 484 (Okla. 1921). The severability of the obligations represented by the various notes remains intact, even when all the notes are executed pursuant to a single transaction and all go into default simultaneously. *Morrow v. Fitzpatrick*, 131 S.E. 189 (Ga. Ct. App. 1926). Of particular relevance to the case at bar is *Westinghouse Credit Corp. v. Kownslar*, 496 S.W.2d 531 (Tex. 1973). There, the defendant had guaranteed payment of a series of promissory notes and the noteholder had already received judgment on some of the notes that were in default. *Id.*

-10-

at 533.  Nonetheless, the noteholder was not precluded by merger from maintaining a separate suit on the remaining notes in default.  *Id.*  Each note represented a separate cause of action, and although the defendant had only signed a single guarantee, the defendant stood in the same relation to the debt as the original maker of the notes, against whom separate actions for each note could be maintained.  *Id.*

Because the Sixth Circuit has construed the Ohio Supreme Court's opinion in *Grava* as adopting the RESTATEMENT (SECOND) approach to claim-splitting, including allowing claim-splitting when a party acquiesces by failing to object, this Court is convinced that if presented with the issue, Ohio courts would follow the clear weight of authority with regard to explicit or implicit contractual agreement as well.

Applying that approach, the Guarantees and the underlying transaction between Bank One and the Keehans support the contention that the parties either explicitly, or in effect, agreed to allow claim-splitting.  First, the transaction involved not one, but several notes executed at different times and purportedly to provide funds for different purposes.  The structure of the transaction alone implies an agreement to allow claim-splitting.  While the Keehans each assumed their obligations as guarantors of the notes executed by APS through single Guarantee documents, that does not change the fact that the underlying obligations were represented by separate promissory notes, any of which could be transferred to a third party.  Irrespective of whether the notes are negotiable, it stands to reason that the parties envisioned the guarantee of those notes would also follow the instruments even if separated.  Indeed, the Guarantee agreements provide, "[guarantor] absolutely and unconditionally guarantees and promises to pay to Bank One, NA ('lender') *or its order*...the indebtedness[.]"  (Compl. Ex. 3 & 4) (emphasis

-11-

added).  Thus, the Guarantees of the obligations represented by the notes are divisible, just as the instruments themselves, and the transaction evinces an implicit agreement to allow claim-splitting with regard to obligations arising on the various notes.

Second, the explicit language of the cognovit provisions in the Guarantees fits the description of an "agreement, not directed to a particular contemplated action, which may have the effect of preserving a claim that might otherwise be superseded by a judgment."[2]  The cognovit provisions contain the following language:

> No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but *the power will continue undiminished and may be exercised from time to time* as Lender may elect *until all amounts owing on this Guaranty have been paid in full.*

(Compl. Ex. 3 & 4) (emphasis added).  At the very least, the logical implication of this language is that Bank One or its assigns may split claims on the various notes and need not proceed on all the notes in one action.  That interpretation is consistent with the fact that each note represents a separate obligation, one of which may be in default at one time while another might not be in default.  Under any other interpretation, if APS defaulted on payment of one of the notes but paid the others, the holder of the notes would have to choose whether to proceed against APS and the Keehans and risk precluding future claims, or wait to see whether the other notes also went into

---

[2] The Keehans argue that "all of the notes and the guarantees merged into the [Bank One] judgment" and therefore "[Export-Import Bank's] reliance on the langue (sic) in the guarantee is nonsensical."  (Reply Supp. Mot. Vacate at 5).  *Existing claims* on a contract *may* merge into a judgment, but there is no support in the law for the Keehans' contention that the *underlying contract itself* merges into the judgment.  Such a rule would render a contracting party immune from action for a future breach of contract once a judgment is rendered for a present breach; that approach is not consonant with the multifarious and continuing obligations in many long-term contracts.  The contract remains the primary source of rules governing *future* disputes between the parties.  It is the Keehans' *own* argument that does not make sense.

-12-

default.  Such an interpretation is commercially unreasonable.  The distinct commercial value of

the notes as separate obligations would be eviscerated and the effect would be judicial

reformation of the transaction into a single unified contract, which is not how the parties agreed

to structure the transaction.  Under the law of Ohio, which governs this contract, courts are

directed to give rational construction to contracts and avoid constructions that are inequitable,

unusual, or unreasonable.  *Graham v. Drydock Coal Co.*, 76 Ohio St. 3d 311, 316 (Ohio 1996).

Thus, the Court interprets the language of the cognovit provisions as, in effect, allowing claim-

splitting.

The Keehans argue that such an interpretation is itself unreasonable because Bank One

would in essence have been permitted to settle a claim with the Keehans on a note in default and

then reassert the remainder of the obligation after settlement.  (Pl.'s Reply Supp. Mot. Vacate at

5).  That argument is without merit.  Although the parties agreed to allow Bank One or its

assigns to split claims and pursue relief on the defaulting notes separately, it does not follow that

Bank One would be allowed to settle a claim on one of the notes for a liquidated sum and then

reassert the deficient satisfaction of the original obligation in a separate action.  The scenario

described by the Keehans does not even implicate claim-*splitting* (i.e. bringing first one claim

arising out of the transaction and then a different claim); rather, the scenario described involves a

plaintiff bringing the *exact* same claim (default on a single note) twice, which is absolutely

precluded by res judicata.

In summation, even if res judicata were a cognizable defense to a cognovit provision

generally, the governing law of the state of Ohio allows claim-splitting where the parties have

agreed explicitly or in effect to allow claim-splitting.  In this case, res judicata is not a

-13-

meritorious defense because the structure of the transaction, as well as the language of the

cognovit provisions, evinces an agreement between the parties to allow claim-splitting.

Therefore, res judicata is unavailable to demonstrate that the Keehans have a meritorious defense

sufficient to warrant vacation of the judgment.

### E.  Laches Is Not a Meritorious Defense Because the United States Is the Plaintiff and Because the Doctrine Is Inapplicable to the Facts of This Case

In addition to the fact that laches is not a cognizable defense to a cognovit provision,

assuming *arguendo* that it were a cognizable defense, the doctrine is inapplicable to the facts of

this case for several reasons.  "[L]aches is understood to be 'a negligent and unintentional failure

to protect one's rights.'"  *Chirco v. Crosswinds Communities, Inc.*, 474 F.3d 227, 231 (6th Cir.

2007).  To demonstrate that laches applies a party must show: "(1) lack of diligence by the party

against whom the defense is asserted, and (2) prejudice to the party asserting it."  *Id.*  As set out

below, laches is inapplicable to the facts of this case because the United States is the plaintiff,

the Keehans cannot demonstrate lack of diligence, and the Keehans cannot demonstrate

prejudice.

First, the United States is the Plaintiff in this action via Export-Import Bank.   "The

principle that the United States are not bound by any statute of limitations, nor barred by any

laches of their officers, however gross, in a suit brought by them as a sovereign government to

enforce a public right, or to assert a public interest, is established past all controversy or doubt."

*United States v. Beebe*, 127 U.S. 338, 344 (1888).  The Keehans cite *Clearfield Trust Co. v.

United States*, 318 U.S. 363, 369 (1943), for the proposition that laches can be asserted against

the United States on actions in contract, specifically commercial paper.  There, the Supreme

Court stated that laches was applicable and "[t]he United States as drawee of commercial paper

-14-

stands in no different light than any other drawee." *Id.*  However, *Clearfield Trust* is easily distinguishable from the facts of this case.  One, in *Clearfield Trust*, the laches asserted was failure to give prompt notice of a forgery of the payee's name, not, as here, lack of diligence in bringing a claim upon commercial paper.  Two, the Court held that the United States stands in the same position as any other drawee of commercial paper; here, the United States is not the *drawee* but the *payee*.  Likewise, *United States v. Republic Ins. Co.*, 775 F.2d 156 (6th Cir. 1985), is inapposite because it involved a *contractually provided* limitations period for actions on the contract; no such provision appears in the Guarantees that are the subject of this case.  As such, the Keehans have failed to demonstrate that this situation is outside the general rule that the United States is immune from the defense of laches.

Second, the Keehans have failed to demonstrate that Export-Import Bank lacked diligence in pursuing judgment on the Ex-Im note.  The Keehans correctly note, "[a]s an equitable defense, laches is applied apart from, and irrespective of, statutes of limitations." *Brundage v. United States*, 504 F.2d 1382, 1384 (Ct. Cl. 1974).  However, that does not mean that the respective statute of limitations is irrelevant.  "[T]here is a strong presumption that a plaintiff's delay in bringing suit is reasonable as long as the analogous statute of limitations has not lapsed" and "[o]nly rarely should laches bar a case before the analogous statute has run." *Coalition for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 466 (6th Cir.2004). Here, the applicable statute of limitations is the fifteen-year limitations period for contracts in writing provided by Ohio Revised Code § 2305.06.  Export-Import Bank waited only four years to pursue a judgment on the Ex-Im note and the Keehans fail to allege any facts sufficient to rebut the presumption that a delay far shorter than the limitations period is reasonable.

-15-

Moreover, as *Chircoi* makes clear, laches involves a lack of diligence, meaning "*negligent* and *unintentional* failure."  474 F.3d at 231 (emphasis added).  There is no indication here that Export-Import Bank's failure to obtain a judgment earlier involved a lack of diligence or was unintentional.  There are any number of reasons why an aggrieved party may intentionally delay instituting a lawsuit, not the least of which include: taking time to research the law to determine whether one's claims are meritorious or frivolous; gathering crucial evidence necessary to support one's claims; concerns about and investigation into whether the defendant is judgment-proof, which would render success in litigation an empty victory; and most of all, hope that efforts to resolve the dispute without resort to costly litigation will prove successful.  Again, the Keehans fail to rebut the strong presumption that Export-Import Bank's delay of less than half of the relevant statutory limitations period is reasonable.

Third, and most importantly, the Keehans have failed to demonstrate that they have been prejudiced by Export-Import Bank's failure to proceed on the Ex-Im note earlier.  In support of the element of prejudice, the Keehans argue that by waiting four years to pursue judgment on the Ex-Im note, Export-Import Bank allowed "over $500,000 in interest and fees to accrue."  (Mot. Vacate at 13).  "[T]he mere fact that interest continued to accrue on a valid debt ...does not present the prejudice necessary for the Doctrine of Laches to apply."  *United States v. Neudai, Inc.*,  No. 92-2389, 14 F.3d 598 (Table), 1993 WL 537722, at *4 (4th Cir. Dec. 16, 1993).  As the Fourth Circuit has noted, forbearance allows the debtor to continue to have use of his money, which is hardly prejudice.  *Id.*  Additionally, the Keehans argue that "[had] the case been brought in a timely manner, this dispute would have been resolved a long time ago."  (Mot. Vacate at 13).  That argument is fatuous because it assumes that initiating litigation is the *only* avenue to

-16-

dispute resolution.  The Keehans' implicit assertion that they would refuse to resolve the

obligation owed to Export-Import Bank in the absence of litigation demonstrates, if anything,

that the Keehans will take every step to avoid repaying the valid debt they incurred, unless

required by judicial order.  The Keehans' hands are hardly clean in this matter and it is

unavailing for them to now throw themselves upon the mercy of equity to save them from the

deficiency of their legal defenses.

      Thus, even if laches were a cognizable defense to a cognovit provision generally, the

Keehans fail to demonstrate that they have a meritorious defense of laches because they cannot

and/or do not show that laches is applicable to the United States in this situation, that Export-

Import Bank lacked diligence in pursuing judgment, or that the Keehans were prejudiced by the

delay.  Therefore, laches is unavailable to demonstrate that the Keehans have a meritorious

defense sufficient to warrant vacation of the judgment.

### F.  The Cognovit Provision Does Not Conflict With the Arbitration Provision

      Unlike the defenses of res judicata and laches, the Keehans' final argument is at least

generally cognizable as a meritorious defense to a cognovit provision.  The Keehans argue that

the cognovit provisions in the Guarantees conflict with the arbitration provisions and thus, the

cognovit provisions are unenforceable and void.  (Mot. Vacate at 11-12).  This argument has the

*potential* to be a meritorious defense to the cognovit provisions because it goes to the validity

and integrity of the cognovit provisions themselves.  However, in light of the contractual

language of the Guarantees, the Keehans' argument does not provide a meritorious defense

sufficient to support vacating the judgment.

      At the heart of this argument are the arbitration provisions contained in the Guarantees

-17-

signed by the Keehans, which state in pertinent part:

> Lender and Guarantor agree that *upon the written demand of either party*, whether made before or after the institution of any legal proceedings, *but prior to the rendering of any judgment in that proceeding*, all disputes, claims and controversies between them, whether individual, joint, or class in nature, arising from this Guaranty, any Related Document or otherwise, including without limitation contract disputes and tort claims, shall be arbitrated pursuant to the Commercial Rules of the American Arbitration Association.

(Compl. Ex. 3 & 4) (emphasis added).  The Keehans argue that the cognovit power provided to Export-Import Bank by the Guarantees renders the arbitration clause meaningless because Export-Import Bank could obtain a judgment without notice or hearing to the Keehans, and the Keehans would be unable to demand arbitration because they would not even know a dispute existed.  (Mot. Vacate at 12).  Thus, they argue, the cognovit provision is irreconcilable with the arbitration provision and the cognovit provision is unenforceable and void.  *Id.*

The Keehans are correct that both Ohio law and federal law favor arbitration agreements.  *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 649 (6th Cir. 2008); *Gerig v. Kahn*, 95 Ohio St. 3d 478. 482 (Ohio 2002).  In contrast, cognovit notes are disfavored in the law.  *Gerold v. Bush*, No. E-07-013, 2007 WL 3227388, 2007-Ohio-5885, ¶ 13 (Nov. 2, 2007).  Nonetheless, Ohio law authorizes the use of cognovit notes in non-consumer transactions if the payee complies with the prescribed procedures.  *Id.*  Thus, the cognovit provision is not void and unenforceable simply because it renders the arbitration provision *less* useful.  However, the Keehans argue that the cognovit provision renders the arbitration provision *meaningless*.  This assertion is not supported by the plain language of the contract, logical reasoning, or the actual facts of this case.

Under the plain language of the Guarantee contracts, the cognovit provision does not

-18-

render the arbitration provision meaningless.  The Keehans cite Ohio authority that states, "[c]ontracts must be read as a whole, and they must be interpreted in such a manner as to give effect to every provision."  *Allied Paper, Inc. v. H.M. Holdings, Inc.*, 86 Ohio App. 3d 8, 16 (Ohio App. 2nd Dist. 1993).  That cardinal rule of contract interpretation does not bolster the Keehans' argument; it counters it.  The language of the arbitration provision clearly demonstrates that the right to demand arbitration is permissive, *not* mandatory.  (Compl. Ex. 3 & 4).  A party must *elect* arbitration as the means of dispute resolution and must do so *before* judgment is rendered in a legal proceeding.  Likewise, the cognovit provision is permissive rather than mandatory; nothing requires the lender to obtain a cognovit judgment rather than sue in a standard proceeding or demand arbitration.  As well, the arbitration provision covers all contract and *tort* disputes of any kind between the parties; tort claims especially would be outside the scope of the cognovit provision and the lender is not empowered to confess judgment on them.

The Keehans retained the right to pursue arbitration in any dispute, including the default of the Ex-Im note, until judgment was rendered.  Logically, the Keehans' right to demand arbitration was not meaningless or illusory simply because, in *this* case, the Keehans failed to demand arbitration before Export-Import Bank obtained a cognovit judgment.  The Keehans could have demanded arbitration as soon as APS defaulted on the Ex-Im note; presumably, the guarantor of a commercial obligation keeps abreast of the status of that obligation and cannot be excused if he does not.  Whether because they did not wish to draw attention to the outstanding obligation or for some other reason, the Keehans never made a demand for arbitration, neither between the time of APS's initial default and the Lorain County judgment for Bank One, nor

afterwards in the intervening four years until Export-Import Bank obtained judgment on the Ex-Im note.[3]

Arbitration, cognovit judgment, or a standard lawsuit are all alternative rights and remedies available to the lender under the Guarantees signed by the Keehans.  Meanwhile, the Keehans could elect between arbitration or a standard lawsuit.  As is often the case, election of a particular right or remedy by one party renders a different right or remedy unavailable to the opposing party.  That does not equate to a finding that particular rights or remedies were meaningless or illusory as an initial matter.  The Keehans' failure to vigilantly monitor and assert their right to arbitration does not provide a legal basis to read out the cognovit provision agreed to by the parties.  As the Keehans themselves noted, the Court is obligated to read contracts, when possible, as giving effect to *all* provisions.  Thus, the Court finds that the cognovit and arbitration provisions are not in conflict, and both are valid and enforceable.  The parties made their bargain and the Court will hold them to it.

### III.  CONCLUSION

The Keehans have moved the Court to take the extraordinary step of vacating the judgment against them.  The standard for vacating a judgment under Rule 60(b)(6) includes a requirement that the party demonstrate a meritorious defense to ensure that vacation of the judgment will not be an empty exercise.  Here, the Keehans have not met that burden.  Each of their asserted defenses; res judicata, laches, and unenforceability of the cognovit provision, are

---

[3] The Keehans' argument, that they believed all outstanding debt from APS had been satisfied in the Ohio action, is disingenuous.  The Judgment of the Lorain County Court of Common Pleas sets forth the identities and amounts of the notes that are subject to it.  (Mot. Vacate Ex. D).  The Ex-Im note is conspicuously absent.  The idea that an outstanding obligation of over two million dollars somehow slipped the Keehans' minds is ridiculous.

-20-

not meritorious defenses, as detailed above.  Thus, the Court DENIES the Keehans' Motion to

Vacate and allows the judgment previously rendered by this Court to stand.

**IT IS SO ORDERED**


March 11, 2009                                           s/ Christopher A. Boyko
Date                                                              CHRISTOPHER A. BOYKO
                                                                    United States District Judge